# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**KYLE GRAY,**

     **Petitioner,**

**v.**                                   **Case No.  4:14cv89-MW/CAS**

**STATE OF FLORIDA,**

     **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On February 18, 2014, Petitioner Kyle Gray, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  Pursuant to an order granting leave, Petitioner filed a memorandum in support of his petition on April 16, 2014.  ECF No. 9.  On December 5, 2014, the State of Florida filed an answer with exhibits, ECF No. 26, and Petitioner filed a reply on January 5, 2015.  ECF No. 28.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov.

§ 2254 Cases in U.S. Dist. Cts.  For the reasons stated herein, the

pleadings and attachments before the Court show that Petitioner is not

entitled to federal habeas relief and this § 2254 petition, ECF No. 1, should

be denied.

## Background and Procedural History

Petitioner Kyle Gray was charged by information filed August 13,

2007, in case number 07-573CFA in the Second Judicial Circuit of the

State of Florida, with one count of robbery while armed with a deadly

weapon in connection with events that occurred on or about June 30, 2007,

in Gadsden County, Florida.  Ex. B.[1]  The information alleged that

Petitioner did unlawfully take a purse and/or wallet and/or personal items

contained in the purse from Joyce Livings with the intent to permanently

deprive her of the money or property, and in the course of committing the

robbery carried a deadly weapon, an aluminum bat, in violation of section

812.13(2)(a), Florida Statutes.  After jury selection was held on April 11,

2008, Ex. C, trial was held April 22-23, 2008.  Ex. D.  The jury returned a

verdict finding Petitioner guilty as charged, Ex. E.  Judgment and sentence

---

[1] Hereinafter, all citations to the state court record, "Ex. – ," refer to exhibits submitted
with Respondent's answer.  *See* ECF No. 26-1.

were entered on April 23, 2008, and Petitioner was sentenced to 30 years in prison with 277 days of credit for time served.  Ex. F.

Appeal was taken to the state First District Court of Appeal in which Petitioner raised as the only point of error the trial court's denial of his motion to exercise a peremptory strike.  Ex. H.  The district court affirmed per curiam without a written opinion on June 19, 2009.  *See* Gray State, 13 So. 3d 58 (Fla. 1st DCA 2009) (table).  Ex. J.  After a motion for rehearing was denied, Ex. K, the mandate was issued on August 13, 2009.  Ex. J. at 2.

On April 6, 2010, Petitioner filed a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850 in the circuit court, raising five grounds for relief.[2]  Ex. N.  An amended Rule 3.850 motion was filed which did not substantively alter the claims made in the original motion. Ex. P. The post-conviction court entered an order on May 27, 2010, summarily denying Petitioner's claims (1) through (4) and setting an evidentiary hearing on claim (5).  Ex. Q.

---

[2] The state post-conviction claims were: (1) trial counsel rendered ineffective assistance of counsel (IAC) by misadvising Petitioner concerning his right to testify; (2) IAC by counsel's failure to object to improper prosecutorial comments; (3) IAC by counsel's failure to impeach a state witness; (4) IAC by counsel's failure to properly investigate and move to suppress evidence; and (5) IAC by counsel's failure to strike a juror that personally knew the defendant and lied during voir dire.  Ex. N.

An evidentiary hearing was held on November 16, 2010, at which Petitioner, his trial counsel, and the juror who was the subject of post-conviction claim (5) testified.  Ex. R.  In an order rendered May 2, 2011, the post-conviction court denied claim (5) and reiterated denial of the other four claims.  Ex. S.  After his pro se motion for rehearing, Ex. T, was denied, Petitioner filed a pro se appeal of the denial of post-conviction relief.  Ex. U, V, W.  The State filed an answer brief, Ex. X, and Petitioner filed a reply brief.  Ex. Y.  The state district court of appeal affirmed denial of post-conviction relief per curiam without written opinion on August 2, 2013.  Ex. Z.  After Petitioner's motion for rehearing was denied, Ex. AA, the mandate was issued October 10, 2013.  Ex. Z at 2.

As noted above, Petitioner Gray filed a petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254 on February 18, 2014. ECF No. 1.  He raises nine grounds for relief:

>  (1) Petitioner's Fourteenth Amendment Right to Equal Protection and Due Process were violated when the trial court erred by denying his peremptory challenge to Juror B after failing to conduct a genuineness analysis, resulting in an unreasonable application of Federal law.  ECF No. 1 at 7; ECF No. 9 at 6.

>  (2) Trial counsel rendered ineffective assistance of counsel (IAC) by misadvising Petitioner as to the depth of the questioning allowed on cross-examination concerning details of his prior convictions. ECF No. 1 at 9; ECF No. 9 at 11.

(3) IAC by counsel's failure to move to strike Juror T.W., who personally knew the Petitioner and knowingly lied during voir dire. ECF No. 1 at 10; ECF No. 9 at 14-15.

(4) IAC by counsel's failure to properly investigate and file a motion to suppress evidence gained through an illegal search.  ECF No. 1 at 12; ECF No. 9 at 17.

(5) IAC by counsel's failure to object to prosecutorial argument that misstated the evidence and made improper comparison between the victim and the Petitioner.  ECF No. 1 at 14; ECF No. 9 at 21-22.

(6) Whether procedural defaults in this proceeding should be excused due to post-conviction counsel's IAC in Petitioner's initial post-conviction proceeding concerning a claim of IAC of trial counsel; and whether a prisoner has a right to be informed that a state-appointed attorney is not "counsel" but is an "agent" only. ECF No. 1 at 16; ECF No. 9 at 27.

(7) IAC in trial counsel's failure to convey the State's plea offer.  ECF No. 1 at 19; ECF No. 9 at 34.

(8) IAC by counsel's failure to object to the admission of irrelevant evidence, the Louisville Slugger bat admitted as Exhibit 12.  ECF No. 1 at 21; ECF No. 9 at 38.

(9) IAC by counsel's failure to investigate and call defense witnesses. ECF No. 1 at 23; ECF No. 9 at 41.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody.  Section 2254(d)

provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim—
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).  *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 181

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).  "This is a

'difficult to meet' and 'highly deferential standard for evaluating state-court

rulings, which demands that state-court decisions be given the benefit of

the doubt.'"  Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 162

U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

This Court's review "is limited to the record that was before the state court

that adjudicated the claim on the merits."  Cullen, 131 S. Ct. at 1388.

"It is not the province of a federal habeas court to reexamine state-

court determinations on state-law questions," and "[i]n conducting habeas

review, a federal court is limited to deciding whether a conviction violated

the Constitution, laws, or treaties of the United States."  Estelle v. McGuire,

502 U.S. 62, 67-68 (1991).  *See also* Swarthout v. Cooke, 131 S. Ct. 859,

863 (2011) ("[W]e have long recognized that 'a "mere error of state law" is

not a denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121,

n.21 (1982))).  Where federal claims are properly raised in a habeas

proceeding, "[b]efore a federal court may grant habeas relief to a state

prisoner, the prisoner must exhaust his remedies in state court."  O'Sullivan

v. Boerckel, 526 U.S. 838, 842 (1999); Title 28 U.S.C. § 2254(b).  In order

for remedies to be exhausted, "the petitioner must have given the state

courts a 'meaningful opportunity' to address his federal claim."  Preston v.

Secretary, Florida Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015)

(quoting McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)).

    For claims of ineffective assistance of counsel, the United States

Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate

deficient performance, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles, 556 U.S. at 123. It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.*

## Ground 1: Juror Challenge

Petitioner claims his constitutional rights were violated when the trial court denied his peremptory challenge to Juror B after failing to conduct a proper genuineness analysis, resulting in an adjudication that is an

unreasonable application of Federal law as determined by the Supreme Court of the United States.  ECF No. 1 at 7; ECF No. 9 at 6; ECF No. 28 (Petitioner's Reply) at 1-2.  Defense counsel attempted to strike prospective Juror B during voir dire and the prosecutor asked for a race-neutral reason.  Ex. C at 66.  Trial counsel stated his reasons, and the trial court concluded the reasons given were race-neutral but not genuine.  Ex. C at 68.  The juror at issue served on the jury.  This claim of error was the subject of Petitioner's direct appeal to the First District Court of Appeal, Ex. H, in which he argued that the trial court erred in denying the peremptory challenge of prospective Juror B based on lack of genuineness because defense counsel proffered several non-pretextual grounds for excusing the juror based on his statements during voir dire.  Ex. H at 16-18.  The appellate court affirmed per curiam without opinion, thus issuing an adjudication on the merits.  Ex. J.  *See* Wright v. Sec'y for the Dep't of Corrections, 278 F.3d 1245, 1254 (11th Cir. 2002).

Respondent contends that this claim is unexhausted because it is not the same claim that was presented to the state district court of appeal on direct review, but is instead the claim presented in the later-filed and untimely motion to recall mandate.  ECF No. 26 at 13-14.  This contention is not borne out by the record.  Petitioner argued on direct appeal that

defense counsel proffered a race-neutral reason for striking Juror B, that the reasons given were not pretextual, and that this pretext standard has been equated with a genuineness standard under Melbourne v. State, 679 So. 2d 759 (Fla. 1996).  Ex. H at 15-16.  He contended that the principles of Batson v. Kentucky, 476 U.S. 79 (1986), have been extended to each venireperson who is a member of a distinct racial group.  Ex. H at 15.  He also argued on direct appeal that the court's focus in the third step of the test under is not on the reasonableness of the explanation but on the genuineness, and that the burden is on the opponent of the strike.  Ex. H at 16.  The State, in its answer brief, concluded that the issue was preserved for state appellate review.  Ex. I at 5.

In his § 2254 petition, Petitioner contends that the "[t]rial court failed to adequately inquire into the genuineness of the challenge, and erroneously relieved the State, as the opponent of the strike, of its burden to establish that the reason for the strike, despite being ruled as race-neutral, was a pretext."  ECF No. 1 at 7.  Petitioner further contends in his memorandum that the trial court bypassed the required genuineness inquiry.  ECF No. 9 at 8.  Petitioner provided the state court with a meaningful opportunity to address this federal claim, and it is exhausted as is required for federal habeas review.  Preston v. Secretary, Florida Dep't of

Corr., 785 F.3d 449, 457 (11th Cir. 2015) (holding that the petitioner must
have given the state courts a "meaningful opportunity" to address the
federal claim) (quoting McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir.
2005))).

During voir dire, Juror B stated on inquiry by the court that he works
for the City of Quincy and had retired from a long career with National
Services Industries.  Ex. 26-1 at 17-18.  He stated that he did not like
retirement, had served on a civil jury in which a verdict was rendered, and
that he had no disabilities, adding "Thank the Lord."  Ex. 26-1 at 18.  Later,
when defense counsel announced a peremptory challenge to Juror B, the
prosecutor asked for a race-neutral reason.  Ex. 26-1 at 66-67.  The
following transpired:

> **MR. HOLTON (defense counsel):**  Well, he's a prior civil
> verdict.  Something about a guy that doesn't want to stay
> retired.  Also, that little comment about "thank the Lord".  I'm not
> against people who are religious.  "Thank the Lord" tends to be
> fairly conservative.
>
> **THE COURT:**  What was that?  I missed that?
>
> **MR. HOLTON:**  Yeah.  He said he had no disabilities,
> "thank the Lord."
>
> **THE COURT:**  Okay.  But that's a neutral reason, but
> that's not a genuine reason.
>
> **MR. HOLTON:**  It's a genuine reason because I believe
> he's a conservative person.  I've got a grandmother and two

grandchildren being threatened with a baseball bat.  And he's the only one in the room that's charged and they are going to say it's him.  I think I'd like to have people who aren't that conservative.

      **MR. JOHNSON (the Prosecutor):** The [ ] problem is we don't know if he's conservative or liberal.  He never said that.

      **THE COURT:**  I think that's a race neutral reason but I don't know that that can be considered a genuine reason.  We don't know.  That was never really explored.

      **MR. HOLTON:**  Well, recognizing that under the Melbourne case we have to give some leeway to the articulated facts.  Have we totally erased the lawyer's judgment or read on the facts?

      **THE COURT:**  If I'm wrong - -

      **MR. JOHNSON:**  What do you mean?

      **THE COURT:**  If I'm wrong and this guy sits and they reverse me, it's coming back.

      **MR. JOHNSON:**  I'm willing to risk that, Judge.

      **THE COURT:**  I think it's not genuine, a genuine reason.  It's race neutral but I don't think it's a genuine reason.  So I'm not going to allow it.

Ex. 26-1 at 67-68.  The state district court of appeal affirmed without

explanation.  Ex. J.

      Petitioner has the burden to show that the adjudication of this claim

on the merits in the state court proceeding resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established

Federal law as determined by the Supreme Court, or that it resulted in a

decision that was based on an unreasonable determination of facts in light

of the evidence presented.  28 U.S.C. § 2254(d).  This is a difficult to meet

standard "which demands that the state-court decisions be given the

benefit of the doubt."  Cullen, 563 U.S. at 181 (quoting Woodford v.

Visciotti, 537 U.S. 19, 24 (2002).   The Supreme Court in Cullen has

explained:

> Our cases emphasize that review under § 2254(d)(1) focuses
> on what a state court knew and did.  State-court decisions are
> measured against this Court's precedents as of "the time the
> state court renders its decision."  Lockyer v. Andrade, 538 U.S.
> 63, 71-72 (2003).  To determine whether a particular decision is
> "contrary to" then-established law, a federal court must consider
> whether the decision "applies a rule that contradicts [such] law"
> and how the decision "confronts [the] set of facts" that were
> before the state court.  Williams v. Taylor, 529 U.S. 362, 405
> (2000) *(Terry Williams)*.  If the state-court decision "identifies
> the correct governing legal principle" in existence at the time, a
> federal court must assess whether the decision "unreasonably
> applies that principle to the facts of the prisoner's case." *Id.,* at
> 413.

Cullen, 563 U.S. at 182.

The Supreme Court in Batson v. Kentucky, 476 U.S. 79 (1986),

provided a three-part test for determining the validity of peremptory strikes.

> First, a moving party must make a *prima facie* showing that a
> peremptory challenge has been exercised on the basis of race
> or gender.  *Batson,* 476 U.S. at 95-97.  Once this requirement
> has been satisfied, the non-moving party must offer a race or
> gender-neutral basis for striking the juror in question.  *Id.* at 97-

98. Third, in light of both parties' submissions, the trial court must determine whether the moving party has shown purposeful discrimination. *Id.* at 98. In reviewing the district court's analysis, we give great deference to the district court's finding of whether a *prima facie* case of discrimination exists. *United States v. Stewart,* 65 F.3d 918, 923 (11th Cir. 1995). Once past the *prima facie* step, the district court's determination concerning the actual motivation behind each challenged strike amounts to pure factfinding, and we will reverse only if the decision is clearly erroneous. *Id.*

United States v. Walker, 490 F.3d 1282, 1291 (11th Cir. 2007). In evaluating the reasons given by the proponent of the strike, the trial court's perception of an attorney's credibility is an essential part of determining if a proffered reason was pretextual. *See id.* at 1293-94. "[I]n considering whether strikes are pretextual, and therefore not genuine, the Supreme Court has asked lower courts to focus on the genuineness of the explanation, rather than its reasonableness. [*Purkett v. Elem,* 514 U.S. 765, 769]. The trial judge is in the best position to evaluate an attorney's candor and ferret out purposeful discrimination." Walker, 490 F.3d at 1294 (citing Miller-El v. Cockrell, 537 U.S. 322, 339 (2003)).

A trial court's finding regarding the credibility of an attorney's explanation of the ground for a peremptory challenge is "entitled to 'great deference.' " Batson, 476 U.S., at 98, n. 21. "A federal habeas court must accept a state-court finding unless it was based on "an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding." Davis v. Ayala, 135 S. Ct. 2187, 2199 (2015).  "State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.' " Davis, 135 S. Ct. at 2199-2200 (2015) (quoting Rice v. Collins, 546 U.S. 333, 338-39 (quoting § 2254(e)(1))).  Habeas relief may not be granted based solely on the conclusion that the state court applied clearly established federal law erroneously or incorrectly; under § 2254(d)(), the application must also be unreasonable.  Carrillo v. Sec'y, Fla. Dep't of Corr., 477 F. App'x 546, 548-49 (11th Cir. 2012) (citing Williams v. Taylor, 529 U.S. 362, 411 (2000)).

In this case, the prosecutor objected to the strike and asked for a race-neutral reason.  The reasons that were supplied by defense counsel were found to be race-neutral.  The prosecutor, who bore the burden throughout, contested the genuineness of the reasons by pointing out that whether or how the juror might be "conservative" was not explored in the record.  The trial judge agreed that the asserted reason was never explored, and found the reason not to be genuine.

The trial judge's determination of credibility of defense counsel's explanation is entitled to great deference.  The ruling was affirmed on the merits by the state appellate court.  Even if the trial judge's adjudication

was incorrect, his genuineness determination has not been shown to be unreasonable in light of the juror's statements and the court's colloquy with counsel.  Petitioner has failed to show that the adjudication of this claim in the state court was contrary to or involving an unreasonable application of a clearly established Federal law as determined by the Supreme Court. Nor has Petitioner shown that the adjudication was based on an unreasonable determination of the facts in light of the evidence of voir dire contained in the record.

For these reasons, habeas relief on ground 1 should be denied.

## Ground 2: Misadvice of Counsel

In this ground, Petitioner contends that his trial counsel rendered ineffective assistance by misadvising him concerning his right to testify and the risks attendant to disclosure of his prior criminal convictions.  ECF No. 1 at 9.  He contends that, at trial, his defense counsel advised him that if he testified, the details of his prior criminal convictions would be exposed to the jury.  He argues that but for this advice, he would have testified.

This same claim was raised in Petitioner's post-conviction motion filed under Florida Rule of Criminal Procedure 3.850, where Petitioner contended that he told his counsel he wanted to testify in order to explain how he came to be in possession of the victim's military identification card

and credit card.  Ex. P at 2.  He alleged that he would have testified that he

found the cards in a ditch and intended to deposit them in a mail box, and

that his version would have been corroborated by the arresting officer.  Ex.

P at 5.  The post-conviction claim was summarily denied.  Ex. Q at 1.

The post-conviction court denied the claim, ruling that when the trial

judge questioned Petitioner about his decision whether to testify, Petitioner

explained that he decided not to testify because his "prior record just looks

so bad that that's the only reason I really don't want to take the stand

because it may put some sense of prejudice into the jurors' mind."  Ex. Q

at 1.  The post-conviction court further concluded that prejudice had not

been shown because Petitioner's criminal record of twelve felonies

supported the reason he gave for deciding not to testify.  Ex. Q at 1.  The

post-conviction court ruled that Petitioner's testimony and disclosure of his

criminal record would have harmed his counsel's trial strategy of arguing

that although Petitioner may have kept property not belonging to him, he

was not a robber.  The court also concluded that having the jury learn of

twelve felony convictions would have destroyed Petitioner's credibility and

the credibility of his defense.  Ex. Q at 2.  The denial of this claim was

appealed to the First District Court of Appeal, Ex. W at 17, but was affirmed

per curiam without opinion.  Ex. Z.  Therefore, the claim was adjudicated on the merits.

The relevant record evidence occurred during the jury trial when the following colloquy occurred:

> **THE COURT:**  Have you discussed with Mr. Gray about whether he's going to testify or not?
>
> **MR. HOLTON:**  At this time, my advice is that he not.  I believe he agrees with my advice, but if you want to make the inquiry, we do have some time.
>
> **THE COURT:**  Okay.  Mr. Gray, it is one thing that, you know, it is your call.  I think the Supreme Court in Nixon actually or one of those cases said that the defendant, as the defendant you are the captain of the ship so to speak.   Mr. Holton can only give you advice.  It's ultimately going to be your call.  Understanding what the questions would be - - some of the questions would be if you were - - if you did decide to take the stand.
>
> **THE DEFENDANT:**  Yes.  I thought about taking the stand, but it would just - -  my prior record just looks so bad that that's the only reason I really don't want to take the stand because it may put some sense of prejudice into the jurors' mind.
>
> **THE COURT:**  I understand.  You don't have to say any more.  I just want to make sure you've discussed it and you're making an informed and intelligent decision.  That's the main thing.  You don't have to decide right now.  Mr. Holton can tell me later.

Ex. C at 188.  The Respondent argues that the trial court's reasons are supported by the record and, further, that during the post-trial sentencing

proceeding, Petitioner essentially admitted his guilt and asked for leniency. ECF No. 26 at 23-24.  Respondent suggests that this request for leniency somehow negates Petitioner's reasons for wanting to testify and somehow demonstrates that the state court's denial of relief was proper.

Petitioner's affirmation at trial that he chose not to testify and his request for leniency at sentencing do not necessarily contradict Petitioner's claim that he only waived his right to testify because his counsel misadvised him that if he did so, the prosecutor would be able to bring out all the details of his prior felony convictions.  Clearly, such advice, if given in that form, would be incorrect.  Section 90.610, Florida Statutes, provides that a party may attack the credibility of a witness, including the accused, by evidence of a prior conviction.  Unless the witness answers untruthfully, this inquiry is generally restricted to the existence of prior convictions and the number of convictions.  Fotopoulos v. State, 608 So. 2d 784, 791 (Fla. 1992).  If a criminal defendant testifies and attempts to mislead or delude the jury about the prior convictions, the prosecution is then entitled to question the defendant concerning the convictions to negate a false impression.  *Id.*

"[W]hen the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain

federal habeas relief was intended to be, and is, a difficult one." Johnson v. Sec'y, Dep't of Corr., 643 F.3d 907, 910 (11th Cir. 2011) (citing Harrington v. Richter, 562 U.S. 86, 101 (2011)).  "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Harrington, 562 U.S. at 102.

Even assuming that Petitioner was misadvised as to whether and how the prosecution could bring out details of Petitioner's convictions, the post-conviction court correctly determined that he has failed to prove the second prong of the Strickland test for ineffective assistance of counsel. *See* Strickland, 466 U.S. at 697.  The theory relied on by the post-conviction court to find no prejudice was based on the fact that Petitioner had a substantial criminal record—twelve prior felony convictions and ten crimes of dishonesty, Ex. D at 12—which, even if only the number of convictions was related to the jury and not the details, would have impaired if not destroyed his credibility if he testified at trial that he found the stolen credit card and identification card in a ditch.  Ex. Q at 2.  The court further found that Petitioner's decision not to testify was in accord with the defense

theory of the case that even if he kept items that were not his, he was not a robber.  These theories, when considered in the context of the case, are supported in the record and fairminded jurists could disagree whether they are inconsistent with decisions of the Supreme Court.  The theory of the defense argued to the jury in closing was that Petitioner was misidentified as the perpetrator, and that having the cards in his pocket, which the State argued showed he knew or should have known they were stolen, was "a way far distance from armed robbery with a deadly weapon."  Ex. Q at 293.  If the jury had heard Petitioner had been convicted of felony offenses twelve times, and had a significant history of crimes of dishonesty, that theory of the defense would have been severely weakened.

Petitioner has also failed to establish that but for counsel's error, if any, in erroneously dissuading him from testifying, there was a reasonable probability that the result of the trial would have been different, a reasonable probability being one sufficient to undermine the court's confidence in the result.  Strickland, 466 U.S. at 697.   "It is not enough for the defendant to show that errors had some conceivable effect on the outcome of the proceeding."  *Id.* at 693.  "[T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.

The victim identified Petitioner in court as the person who robbed her after threatening her with an aluminum baseball bat, and she had previously picked his photograph out of a photographic lineup as the perpetrator.  Ex. Q at 61, 63, 152.  The victim's identification card and credit card were found on his person when he was arrested three weeks after the robbery.  Ex. Q at 99.  The car that Petitioner owned at the time of the robbery generally matched the description of the blue car driven by the robber.  Ex. Q at 94.  Even if Petitioner had testified that he found the identification card and the credit card in a ditch near his home, that innocent explanation would have been severely weakened by the jury's knowledge that he was a convicted felon with a long record.  There is no reasonable probability sufficient to undermine confidence in the outcome that his explanation of innocence would have caused the jury to reject the other evidence identifying him as the perpetrator and find him not guilty of the charge.

Accordingly, Petitioner has failed to show that the adjudication of this claim by the state courts resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, that being the Strickland decision.  Nor has the Petitioner shown that the

state court's adjudication of this claim was based on an unreasonable determination of the facts in light of the evidence.

For these reasons, ground 2 should be denied.

### Ground 3: IAC – Failure to Strike Juror

Petitioner contends that his trial counsel was ineffective for failing to strike prospective juror T.W. on the grounds that he lied during voir dire and concealed the fact that he had worked with Petitioner.  ECF No. 1 at 10-11.  The post-conviction court granted an evidentiary hearing on this claim, Ex. Q at 3, but ultimately found the claim not proven. Ex. S.  The hearing was held on November 16, 2010, at which Petitioner was represented by counsel.  Ex. R.  Testimony was taken from Petitioner's trial counsel, Leonard Holton, and from Petitioner and Juror T.W.  At the conclusion of the hearing, the post-conviction court found that the juror's testimony that he did not currently recall Petitioner, did not recall him at the time of trial, and had not spoken with him was more credible.  The court further concluded that trial counsel's testimony was credible when he testified that he had nothing in his file that reflected any problem with Juror T.W. being on the jury, and that according to Petitioner's claim, the issue with Juror T.W was not raised until after jury selection was complete.  Ex. R at 40.  The post-conviction court concluded that trial counsel had not been shown

to be ineffective in failing to strike the juror.  Ex. R at 40-41.  Petitioner

appealed the denial of this claim to the First District Court of Appeal, which

affirmed per curiam without explanation.  Ex. X, Z.  The claim was therefore

adjudicated on the merits.

At the evidentiary hearing, Petitioner testified that prior to his arrest,

he worked at the Printing House of Quincy and had informed his trial

counsel of this.  Ex. R at 6.  He testified that he had seen Juror T.W. over a

hundred times at the Printing House where the juror also worked, and had

spoken with him on occasion there.  Ex. R. at 8-9.  Up to 80 or 90 people

worked on the day shift.  Ex. R at 16.  Petitioner testified, "A lot of times he

[Juror T.W.]  would say something to me because I'd be - - I was on drugs

at the time so I would come in hung over or still intoxicated from partying

the night before."  Ex. R. at 8.  He said Juror T.W. had advised him to "slow

down or tighten up" or he would lose his job.  Ex. R. at 9.  Petitioner

testified that he flirted with the female employees and was "kind of

promiscuous," and that Juror T.W. also advised him "that ain't the way to

go."  Ex. R at 10.  He denied that he and Juror T.W. ever had a "falling out,"

or that they left on "unfavorable terms," but that Juror T.W. did not agree

with the way Petitioner was living.  Ex. R. at 11, 19.  Petitioner said he had

been told that Juror T.W. sometimes reported his behavior to the supervisor.  Ex. R at 11.

Petitioner testified that at trial he recognized Juror T.W. and told his trial counsel about working together, but did not tell him he thought the juror would be unfavorable toward him.  Ex. R. at 13.  He said he changed his mind after the trial started and told his trial counsel that he did not want Juror T.W. on the jury, and that counsel told him to relax and that he would "take care of it."  Ex. R at 13.  He testified that he "couldn't make it a big deal" when he told counsel about knowing Juror T.W., but claimed he did show his great concern about the juror knowing that he used to do drugs and come into work drunk.  Ex. R at 20.  Petitioner believed that Juror T.W. answered falsely by concealing that they knew each other.  Ex. R at 14.

Trial counsel, Leonard Holton, testified that he had reviewed his case files, which had no notation concerning Juror T.W.'s having worked with Petitioner.  Ex. R at 24.  He said he had no recollection of Petitioner bringing to his attention the fact that he worked with Juror T.W. or that the juror had a negative association with him.  Ex. R at 24.  He agreed that if he had been informed of such a situation by a defendant, he would not have told him to "let it ride, I'll take care of it," and he had no recollection of ever telling that to Petitioner.  Ex. R at 25-26.  Holton testified that had he

been told at any time prior to the jury being sworn, he would have taken the juror off the panel and, if he learned of it after trial began, he would have brought it to the attention of the court, because there were alternates who could have served.  Ex. R. at 25-26.

Holton testified that he did not recall if he knew Petitioner had worked at the Printing House.  Ex. R at 27.  He said the intake interview indicated Petitioner told the investigator that he worked at McDonald's on the day of the offense.  Ex. R at 27.  Holton said he would like to think that if he knew Petitioner worked at the Printing House, he would have inquired of Juror T.W. about that connection.  Ex. R at 28.

Juror T.W. testified at the evidentiary hearing that at the time of trial he did not remember working with Petitioner, and still does not know him. Ex. R at 30.  He said there were hundreds of employees at the Printing House and he had no recollection of any conversations he may have had with Petitioner.  Ex. R at 31-32.  He recalled no conversations about Petitioner coming to work drunk or high, and would not have reported it if he had known.  Ex. R. at 34.

Petitioner's counsel at the evidentiary hearing argued that trial counsel was ineffective in failing to question Juror T.W. during voir dire about his work at the Printing House and his connection to Petitioner there;

and that the delay between trial and the post-conviction hearing could account for his lack of memory of Petitioner.  Ex. R at 37.  The post-conviction court denied the claim, finding the testimony of Holton and Juror T.W. more credible, and concluding that Petitioner has not met his burden of demonstrating ineffective assistance of counsel.  Ex. R at 40-41.

State court findings are presumed correct and Petitioner has the burden under 28 U.S.C. § 2254(e)(1) of rebutting the presumption by "clear and convincing" evidence.  *See* Davis v. Ayala, 135 S. Ct. 2187, 2199-2200 (2015).  Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact, and deference to the presumption of correctness requires a federal habeas court to do more than simply disagree with the state court before rejecting its factual determinations. Rose v. McNeil, 634 F.3d 1224, 1241 (11th Cir. 2011).  "Instead, it must conclude that the state court's findings lacked even fair support in the record."  *Id.* (quoting Turner v. Crosby, 339 F.3d 1247, 1273 (11th Cir. 2003) (quoting Marshall v. Lonberger, 456 U.S. 422, 432 (1983))).  Under § 2254(d), federal courts have "no license to determine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."  Marshall, 459 U.S. at 434.

The Eleventh Circuit has explained:

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010).  Instead, AEDPA requires that we accord the state court substantial deference. "If reasonable minds reviewing the record might disagree about the finding in question," we must yield to the state court's factual determination.  Brumfield v. Cain, 135 S. Ct. 2269, 2277 (2015) (quotation marks omitted and alteration adopted). "AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' " Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007) (quoting 28 U.S.C. § 2254(e)(1)).

Nejad v. Attorney Gen., State of Georgia, 830 F.3d 1280, 1289 (11th Cir.

2016).  "Under § 2254(d)(1)'s 'unreasonable application' clause, we grant

relief only 'if the state court identifies the correct governing legal principle

from [the Supreme] Court's decisions but unreasonably applies that

principle to the facts of the prisoner's case.' " Id. at 1289 (quoting Jones v.

GDCP Warden, 753 F.3d 1171, 1182 (11th Cir. 2014) (quoting Williams v.

Taylor, 529 U.S. 362, 413 (2000))).

Based on its credibility findings that the testimony of Holton and Juror

T.W. was most credible, the post-conviction court found as fact that Holton

did not provide deficient performance in failing to strike or move to strike

Juror T.W.  The evidence provided "fair support" for the state court's

findings, which were affirmed on appeal.  See Rose, 634 F.3d at 1241.

Juror T.W. did not recall knowing or speaking to Petitioner when they

worked together.  No evidence was presented that he concealed

knowledge of or connection to Petitioner.  Trial counsel did not recall

having known Petitioner worked at the Printing House, and did not have

any reason to believe Petitioner advised him of this fact.  He did not recall

Petitioner voicing any concern about Juror T.W. during voir dire or

thereafter and would have pursued it if he had been so advised.  Based on

this evidence found to be most credible, the post-conviction court found the

claim of ineffective assistance had not been proven.

The post-conviction court was not required to address the prejudice

prong of <u>Strickland</u> once the court determined that trial counsel's

performance was not deficient.   *See* <u>Strickland</u>, 466 U.S. at 697.  Even so,

Petitioner also failed to provide any proof of prejudice.  Where a post-

conviction motion alleges that trial counsel was ineffective for failing to

challenge a juror, the petitioner "must demonstrate that a juror was actually

biased against the defendant."  *Id.* at 324.  Under this standard, the

Petitioner must show that the juror was biased against the Petitioner, "and

the evidence must be plain on the face of the record."  <u>Fennell v. Sec'y,</u>

<u>Fla. Dep't Corr.</u>, 582 F. App'x 828, 832 (11th Cir. 2014) (per curiam)

(quoting <u>Carratelli</u>, 961 So. 2d at 324).  The evidence failed to demonstrate

that Juror T.W. was actually biased against Petitioner.

Petitioner has not shown that the state court's adjudication resulted in a decision contrary to, or involving an unreasonable application of, clearly established Federal law as determined by the United States Supreme Court, or that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence.

For these reasons, the habeas relief sought in ground 3 should be denied.

### Ground 4: IAC – Failure to Investigate and Move to Suppress

Petitioner contends that trial counsel was ineffective for failing to properly investigate and file a motion to suppress evidence that he alleges was obtained through an illegal search.  ECF No. 1 at 12; ECF No. 9 at 17.  This claim was presented to the post-conviction court, Ex. P at 13, and summarily denied.  Ex. Q at 3; Ex. S.  Petitioner claims that an aluminum baseball bat was seized from the location where he was residing, but Detective Rowan did not have permission to search.  Ex. P at 14.  During trial, Detective Rowan testified that permission was received from Petitioner's sister, who stored items in the house and had access to it.  Detective Rowan testified:

Q. (THE PROSECUTOR);  Okay.  Did you actually go to his residence, make contact with his sister?

A. (DETECTIVE ROWAN):  Yes, sir, I did.  He - - I'd identified through conversation that he was living out at a residence on 290 J and J Lane, which was actually identified as his grandmother's residence.  I believe his grandmother had passed and it was a residence that was under construction by his father.  His sister had access to the home and had been storing items inside the house.

Q. And did she allow you to go into the house and look where he was staying?

A.  That's correct.

Q.  What did you see when you went into the house?

A.  Again, as I said, the house was under construction. There were a lot of tools inside the house.  But throughout the house, there were clothing that were thrown around the house.

Q.  Male or female clothing?

A.  A little bit of both.  There was male clothing specifically in a bedroom that was back in a corner, that it was obvious that somebody had been sleeping in.  There was some documents inside the house that identified Kyle Gray.  There was also a key tag to the 1993 Mazda car that was inside the residence. There was a back bedroom, as I said before, that it was obvious that somebody had been sleeping in.  And in the corner, as you walked in the door of the bedroom, in the front corner was a gray aluminum baseball bat.

Ex. D at 154-55.  The aluminum bat that was taken from the residence was

admitted into evidence without objection as State's Exhibit 12.  Ex. D at

156.

Petitioner contends that his sister told him she did not give permission to search, but told Detective Rowan that she did not think she had the authority to give permission and that she did not have property in the house other than a bed she loaned to Petitioner.  Ex. P at 14-16. Petitioner contends that he conveyed this information to his defense counsel, but no effort was made to investigate the matter or speak with his sister, or to file a motion to suppress.  Ex. P at 15.  The post-conviction court summarily denied the claim, stating in full:

> The only "evidence" retrieved was an aluminum bat.  If suppressed, the outcome of the trial would have been the same.  The relevance of this evidence retrieved was trivialized even by the state in the final argument since no bat recovered could be identified as the weapon.  At best, it showed Defendant had access to a common aluminum bat.  (Tr. 269-270).  It is clear the crux of the case is the photo line-up and Defendant's actual physical possession in his pocket of victim's military ID and credit card taken in the robbery.  (Tr. 295-298).

Ex. P at 3.  This ruling is a determination that Petitioner failed to establish prejudice, the required second prong of the Strickland test for ineffective assistance of counsel.  Denial of this claim was appealed, but was per curiam affirmed without opinion, constituting a ruling on the merits.  Ex. Z.

The Respondent contends that the state court's adjudication is entitled to deference and that for the same reasons set out in the post-conviction court's order, the Petitioner cannot show the state court's

adjudication was contrary to or an unreasonable application of <u>Strickland</u>, or that it rested upon an unreasonable determination of the facts in light of the evidence presented.  ECF No. 26 at 30-31.  Even assuming trial counsel failed to investigate the circumstances surrounding the search and should have filed a motion to suppress, Petitioner has failed to demonstrate that suppression would have been granted.  Detective Rowan testified under oath that he was given permission to search by an individual who had access to the home and who he believed stored items there.

Moreover, even if suppression had been granted, Petitioner has failed to establish a reasonable probability that the result of the trial would have been different, that being a probability sufficient to undermine confidence in the outcome.  Separate evidence was presented that Petitioner's car was repossessed on July 19, 2007, which was before the house search on July 23, 2007. Ex. D at 178.  The persons responsible for repossessing the car did not look though it until sometime later, probably not in the same week. Ex. D at 179.  When one of them did, he saw a dented aluminum baseball bat in the trunk that had no writing on it.  Ex. D at 181.  That bat was not kept.  Ex. D at 182.  Prior to this testimony, defense counsel moved to exclude reference to the bat seen in the trunk of the car because of remoteness in time from the offense and lack of relevance.  Ex. D at 134-

35.  In arguing that motion, counsel stated that the bat found in the residence was marked "Louisville Slugger."  Counsel argued that an investigator was informed by Michael Graham, the victim's ten-year-old grandson, that the bat used in the robbery was an "Easton" brand bat.  Ex. D at 137.  Defense counsel contended that testimony regarding an unidentified bat found in the car but not retained was irrelevant, and that any relevance was outweighed by the prejudice.  Ex. D at 139.  The motion was denied and testimony was admitted.

Regardless of whether the actual bat found in the residence, apparently marked "Louisville Slugger," was excluded from evidence, the jury would have heard three witnesses testify that Petitioner threatened the victim with an aluminum bat and would have heard that an aluminum bat was seen in the trunk of his car.  That evidence would have been presented regardless of any suppression of the bat found in the residence.  As the post-conviction court concluded, production or identification of the actual bat used in the crime was not critical; what was critical was evidence that Petitioner had access to an aluminum bat.  Further, the testimony concerning three different bats—the one used in the robbery which defense counsel referred to as having been identified as an "Easton" brand, one taken from the residence apparently marked as a "Louisville Slugger"

brand, and one seen in the car trunk with no writing on it—was used by

defense counsel in opening and closing argument to attempt to show

conflicts in the evidence sufficient to support reasonable doubt.  Defense

counsel argued in closing:

> Let's talk about the bat. There is testimony in this case about
> bats, three different bats.  Obviously, she cannot identify the bat
> in evidence as the one that was used and the bat that was - -
> we don't have it, but at least we've heard about the bat that
> was in the trunk that had a noticeable dent in it and it did not
> have any type of drawing, lettering on it, you know, from the
> manufacturing.
>
> Well, what's the significance of that?  Here is the
> significance of that.  There was information given to law
> enforcement that it was an Easton.  Easton is a distincti[ve]
> brand.  That's not a Easton bat and the bat supposedly was in
> the trunk also had no lettering, no identification on it, so that's
> not an Easton bat.  How many bats do we have to associate
> with Mr. Gray in order for that to have any evidentiary value?  If
> you have two bats that we can inferentially associate with Mr.
> Gray that weren't the bat that was used, is it reasonable to
> assume that he had a third bat and he must have just disposed
> of it? I submit to you that's not reasonable. That's a stretch.

Ex. D at 288.[3]

The post-conviction court found prejudice was not proven. "The

question 'is not whether a federal court believes the state court's

---

[3] None of the witnesses testified specifically that the bat used in the robbery was an
Easton brand bat.  Defense counsel made reference to an investigator's report in which
the victim's grandson allegedly identified the bat as an Easton brand, but that
investigator did not testify and the grandson was not asked about whether he identified
the bat as an Easton brand.  Notwithstanding that, Defense counsel was allowed to
make references in his closing argument that the bat used in the robbery was an Easton
brand bat without objection by the prosecutor.

determination' under the <u>Strickland</u> standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quoting <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007)).  Based on all the evidence presented, it was not an unreasonable determination by the state court that Petitioner has not met the prejudice prong of test for ineffective assistance of counsel.

The jury had before it the victim's in-court identification of Petitioner as the person who robbed her by threatening her with a baseball bat; and she previously picked his photograph out of a photographic lineup. Petitioner had the victim's identification card and credit card in his pocket when arrested, and his car, which was identified as generally matching that of the robber, had an aluminum bat in the trunk when it was repossessed. Finally, the evidence of three different bats presented arguable conflicts in the testimony that were potentially beneficial to the defense.  Because Petitioner has failed to demonstrate a reasonable probability that, but for counsel's alleged error, the result of the trial would have been different, the claim has not been proven.

Petitioner has failed to show that the adjudication of this claim in the state court was contrary to, or involving an unreasonable application of, a

clearly established Federal law as determined by the Supreme Court.  Nor has Petitioner shown that the adjudication was based on an unreasonable determination of the facts in light of the evidence contained in the record.

For these reasons, habeas relief on ground 4 should be denied.

## Ground 5: IAC – Prosecutorial Comment

In this ground, Petitioner claims that trial counsel was ineffective in failing to object to improper prosecutorial closing argument that the victim was a "frail 65 year old woman" and Petitioner was a "young, strong able bodied young man," and misstatement of the evidence by arguing the victim was in fear for her life.  ECF No. 1 at 14, 15; ECF No. 9 at 21-22.

This claim was presented in substantially similar form to the post-conviction court, but was summarily denied.  Ex. P at 6, Q.  Petitioner contended in his post-conviction motion that the prosecutor misstated the evidence by arguing that the victim was in fear for her life because of the way the bat was used.  Ex. P at 7.  He also claimed in the post-conviction court that his trial counsel was ineffective in failing to object when the prosecutor made what Petitioner characterized as an improper "Golden Rule" argument by stating that the victim was a frail older woman and the Petitioner was a young, able bod[ied] man.  Ex. P at 8-9.  The post-conviction court summarily denied the claim, stating:

Even assuming Defendant's quoted portions of the record were objectionable, they were minor.  Next, there was no "Golden Rule" violated.  The argument, when quoted in context, refers to circumstances supporting "force", "fear", and "deadly weapon", which where relevant to the elements of the definitions of robbery.

Ex. Q at 2; Ex. Ex. S.  Denial of this claim was appealed to the First District Court of Appeal, Ex. W, which affirmed per curiam on August 2, 2013.  Ex. Z.  The claim was therefore adjudicated on the merits.

The prosecutorial argument that Petitioner contends misstates the evidence and improperly compares the victim to the defendant was made in the context of discussing how a bat could be considered a deadly weapon and whether the victim was reasonably in fear, as follows:

It's not designed to bash skulls.  But, like I said, it doesn't take a stretching of the imagination to see that is would very easily do that.

And you heard from Ms. Livings.  I asked her, How did you feel when the defendant walked up to you and told you to give your purse and said, Don't make me hurt you.  She said the only thing she could think about was what he would do to her.  She was in fear.  She was in fear of death.  She was in fear of great bodily harm.  That is precisely what we are talking about here.  So there really can't be any question that the way that bat was used, the bat was not designed to be a deadly weapon, but the fact that it was threatened to be used as a deadly weapon is, in fact, under the law a deadly weapon.

And, remember, what we are talking about here.  The kind of difference is between the defendant and the victim.  You had a young, strong, able bod[ied] young man.  The victim [is] a frail 65-year-old woman, who had no way, no way of defending

herself, no one to help her other than her 10- and 12-year-old grandchildren.

Ex. D at 273-74.  During trial, the victim testified that when Petitioner approached her, he had a baseball bat in his hand "and he showed me the bat."  Ex. D at 57.  She testified, "He said, I want your purse.  Don't make me hurt you, because you have two kids in the car with you."  Ex. D at 57. The victim testified that when he approached her, "My heart dropped down to my toes, because I could just see myself being hurt, and my grandchildren too."  Ex. D at 59.  The victim's grandson testified that he saw the man holding a bat and he was "[h]itting it on his hand."  Ex. D at 92.  When the victim leaned into the car to get the purse for him, and was trying to remove some of her items, she said he "reached in and jerked it out of my hand."  Ex. D at 57.  When he did so, he still had the bat in his other hand.  Ex. D at 68.

Trial counsel did not render deficient performance in representation of Petitioner by failing to object to any of this argument.  The testimony established that the Petitioner was carrying an aluminum bat and hitting it against his hand.  He showed the bat to the victim and cautioned her not to make him hurt her.  The victim testified to being in fear.  The prosecutor's argument was clearly based on the testimony given as it related to the elements of the crime.

The prosecutor's comment on the relative age and size of the victim as compared to the Petitioner was also fair comment based on the jury's observation of the victim and the Petitioner.  She was an older woman.  He was a young and apparently able-bodied man.  Commenting on this was relevant to proof that under the circumstances the victim had a reasonable basis to be in fear for her life, an element of the crime charged.  Petitioner was charged with armed robbery in violation of section 812.13(2)(a), Florida Statutes.  Ex. B.  This offense is proven if money or property is taken, "when in the course of the taking there is the use of force, violence, assault, or putting in fear," and if in the course of committing the robbery the perpetrator carried a deadly weapon. § 812.13(1), (2)(a), Fla. Stat.  The test of proof of "putting in fear" is whether a jury could conclude that a reasonable person, under like circumstances, would have felt sufficiently threatened to accede to the robber's demand.  Magnotti v. State, 842 So. 2d 963, 965 (Fla. 4th DCA 2003).  The prosecutor's argument pertained to this element and was proper.

If trial counsel had objected to the cited prosecutorial argument, that objection would not have been well taken, and would not have provided grounds for a mistrial or reversal on appeal.  In Florida, prosecutors are generally afforded wide latitude in presenting closing arguments.  Fletcher

v. State, 168 So. 3d 186, 213 (Fla. 2015).  Improper comments will merit a

mistrial only when they deprive a defendant of a fair and impartial trial,

materially contribute to the conviction, are so harmful or fundamentally

tainted as to require a new trial, or are so inflammatory they might have

influenced the jury to reach a more severe verdict than it would have

otherwise rendered.  Miller v. State, 161 So. 3d 354, 382 (Fla. 2015).

To establish prosecutorial misconduct, the Petitioner must first show

that the comments were improper and then that the comments rendered

the trial fundamentally unfair.  *See* United States v. Eyster, 948 F.2d 1196,

1206 (11th Cir. 1991).  Prosecutorial misconduct in closing argument

"violates the Constitution if it renders the defendant's trial "so fundamentally

unfair as to deny him due process" and "reaches this threshold of

fundamental unfairness if it is 'so egregious as to create a reasonable

probability that the outcome was changed.' "  Davis v. Zant, 36 F.3d 1583,

1545 (11th Cir. 1994) (quoting Brooks v. Kemp, 762 F.2d 1383, 1403 (11th

Cir. 1985) (en banc), *vacated on other grounds,* 478 U.S. 1016 (1986),

*reinstated,* 809 F.2d 700 (11th Cir.1987)).

Because the argument was based on the evidence and was pertinent

to the elements of the crime charged, it was proper and counsel was not

deficient in failing to object.  Further, even if the comments were

objectionable, they have not been shown to have rendered the trial fundamentally unfair or a violation of due process such that federal habeas relief is warranted.  Petitioner has failed to show that the adjudication of this claim in the state court was contrary to, or involving an unreasonable application of, a clearly established Federal law as determined by the Supreme Court.  Nor has Petitioner shown that the adjudication was based on an unreasonable determination of the facts in light of the evidence contained in the record.

For these reasons, habeas relief on ground 5 should be denied.

### **Ground 6: Martinez v. Ryan**

This portion of Petitioner's § 2254 petition makes no specific claim for habeas relief, but presents argument that any of his claims that are found to be unexhausted should be excused from procedural default under Martinez v. Ryan, 132 S. Ct. 1309 (2012).  He notes in his reply that Respondent contends he failed to exhaust claims 7, 8 and 9, and that they are procedurally defaulted.  ECF No. 28 at 23.  Petitioner seeks to have any procedural default excused on the grounds that he asked his appointed counsel to file additional post-conviction claims in in the circuit court, similar

to those forth in his claims 7, 8, and 9 in this Court, but counsel did not do so.

He contends that his appointed counsel was given 30 days to file additional claims which Petitioner had set forth in a draft of a supplemental motion which he says counsel had access to.  Petitioner argues that because counsel failed to file the additional claims, which he could have done pursuant to the court orders, any default should be excused. Petitioner also contends without detailed discussion that his post-conviction counsel was appointed without his permission and that he was not advised the attorney was only an "agent."  ECF No. 1 at 17.

The record reflects that Petitioner was **not** given 30 days to file new claims.  The non-final order summarily denying claims 1 through 4 and setting a hearing on claim 5 stated that "nothing herein prevents the parties from introducing evidence to further support or refute the underlying factual claims in Grounds 1, 3, and 4 to create a complete factual record or to cause this Court to revisit the summary denial."  Ex. Q at 3-4.  Subsequent to that order, counsel was appointed to represent Petitioner at the evidentiary hearing.  Ex. Q at 4.

At the conclusion of the evidentiary hearing, the provision in the non-final order allowing 30 days to submit additional information was discussed.

Ex. R at 41.  The post-conviction court granted an additional 30 days after the evidentiary hearing for the parties to "introduce evidence further or further support [or] refute the underlying factual claims in the other grounds."  This latter reference was to the other grounds already pled which were summarily denied.  In neither the post-conviction court's non-final order nor in its o*re tenus* order on the record of the hearing did the court expressly grant Petitioner time to file new claims.

In the final order denying post-conviction relief, the court stated that Petitioner had been given 30 days "to submit any further evidence to the Court for its consideration on any of the counts in the Motion."  Ex. S. Petitioner incorrectly contends that these orders would have allowed his appointed counsel to file three additional claims not contained in his amended motion for post-conviction relief.  Ex. 9.  The orders allowed the parties only to submit additional evidence supporting or refuting the claims that were before the post-conviction court.

The Supreme Court in <u>Martinez</u> provided a limited exception for procedural default for substantial claims of ineffective assistance of trial counsel, holding that post-conviction counsel's failure to raise a claim in a state collateral proceeding can provide cause and prejudice to excuse a procedural default, but only if: "(1) the ineffective-assistance-of-trial-counsel

claim was a "substantial" claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial-counsel claim'; and (4) state law requires that the claim 'be raised in an initial review proceeding.' " Trevino v. Thaler, 133 S. Ct. 1911, 1918 (quoting Martinez, 132 S. Ct. at 1318-21).  "The rules for when a prisoner may establish cause to excuse a procedural default are elaborated in the exercise of the Court's discretion." Martinez, 132 S. Ct. at 1318.  To demonstrate that the ineffective assistance of trial counsel claim was "substantial," the Petitioner must demonstrate the claim has some merit.  *Id.*  "In order to establish prejudice to excuse a default, the petitioner must show 'that there is at least a reasonable probability that the result of the proceeding would have been different' absent the constitutional violation." Raleigh v. Sec'y Fla. Dep't of Corr., 827 F.3d 938, 957 (11th Cir. 2016).

Counsel was appointed after the non-final order was entered denying claims 1 through 4 and granting a hearing on claim 5, and none of the subsequent orders of the court authorized the filing of new claims, as Petitioner contends is the basis for post-conviction counsel's ineffective assistance.  Petitioner request that the procedural defaults be excused for

claims 7, 8 and 9, and the facts and law pertaining to these claims, will be discussed separately.

### Ground 7: IAC – Failure to Convey Plea Offer

Petitioner contends that his trial counsel was ineffective in failing to convey a plea offer of 8 years in prison to him, and that although he had previously rejected a plea offer of 20 years, he would have taken the plea offer of 8 years.  ECF No. 9 at 36.  Petitioner proceeded to trial and was sentenced to 30 years.  Petitioner alleges that after the trial, he learned of an 8 year plea offer from his sister, who told him she had learned of it from the Office of the Public Defender.

This claim was not raised in the Petitioner's pro se amended motion for post-conviction relief, and is therefore unexhausted and procedurally defaulted, unless that default is excused.  Petitioner contends that even though this claim was not raised in the post-conviction motion in the state court, this Court should excuse the procedural default because he requested his later-appointed post-conviction counsel to file the claim pursuant to court orders that Petitioner understood to allow the filing of new claims after the court had summarily denied claims 1 through 4 and granted an evidentiary hearing on claim 5.

Before finding that a procedural default should be excused, the Court

must find that trial counsel was ineffective.  Even if trial counsel failed to

convey the plea offer, Petitioner has not demonstrated that his post-

conviction counsel was deficient in not filing the claim pursuant to the post-

conviction court's orders allowing 30 days to file additional evidence to

support or refute the claims already made.  Because Petitioner has not met

the second prong of the <u>Martinez</u> test by showing that post-conviction

counsel was ineffective in failing to file the claim, the requirements for

excusing the procedural default have not been met.  *See* <u>Martinez</u>, 132 S.

Ct. at 1318.  Further, even though this claim was not filed in the post-

conviction court, trial counsel testified at the evidentiary hearing as follows:

> Q. (Assistant State Attorney)  Okay.  Now, taking you
> back to the State of Florida vs. Kyle Gray, were you appointed
> to represent Mr. Gray on the charge of armed robbery with a
> deadly weapon?

> A. (MR. HOLTON) Yes, I was assigned to represent Mr.
> Gray.  I was not the first attorney on the case.  Vincent Boothe
> left the office.  I came over from Tallahassee to Quincy and I
> assumed his caseload and Mr. Gray was one of the cases.

> Q.  All right.  And did you have an opportunity then prior
> to trial to meet with Mr. Gray and discuss strategy and so forth?

> A.  Yes.

> Q.  Okay.  And I assume that no plea offer was extended
> or none was agreeable and so the case proceeded to trial?

A.  I don't believe that there was ever an agreement on that.  **My understanding, or excuse me, my recollection was that the State was seeking a prison sentence.  That was the only plea offer and that Mr. Gray was not interested in accepting a prison sentence**.

Ex. R at 23-24 (emphasis added).

The Respondent argues prejudice necessary to support a finding of ineffective assistance of trial counsel cannot be shown because the record reflects that the same prosecutor who offered the 20 year plea was the same prosecutor who tried the case, and who at sentencing advised the trial court that the case was "not by any stretch of the imagination" a guidelines case.  ECF No. 26 at 46-47; Ex. D at 309-10.  Respondent notes that the 8 year plea offer which Petitioner contends was made was only slightly above the 88 month minimum guidelines score—a score that the prosecutor argued at sentencing was not appropriate.  The Respondent also argues that the record of sentencing indicates the sentencing judge would not have been likely to agree to an 8 year sentence.  ECF No.  26 at 77.  Based on what the trial court described as Petitioners "escalating history," he concluded that a sentence of 30 years was appropriate.  Ex. D at 318.  Petitioner has not demonstrated a reasonable probability sufficient to undermine confidence in the outcome of his trial, that if he had received and agreed to a plea deal of 8 years in prison the result would have been

different and the trial court would have accepted that plea and sentenced him to 8 years.

Because Petitioner cannot demonstrate that his post-conviction counsel was deficient in failing to file new claims pursuant to the orders of the post-conviction court identified by Petitioner, he has not met the requirements to excuse the procedural default. Further, Petitioner has not demonstrated under the prejudice prong of Strickland that his trial counsel was guilty of substantial ineffective assistance even if he had been given a plea offer. Moreover, the testimony of trial counsel at the evidentiary hearing indicates he was aware of only one plea offer and, further, that Petitioner was not interested in any plea offer requiring prison.

For these reasons, Petitioner has not carried his burden under Martinez to allow his procedural default to be excused. For these same reasons, even if this claim can be heard on the merits, Petitioner has failed to demonstrate ineffective assistance of trial counsel or a reasonable probability that but for the alleged error, the result would have been different and the 8-year sentence would have been imposed. Accordingly, Petitioner has failed to show that the adjudication of this claim in the state court was contrary to, or involving an unreasonable application of, a clearly established Federal law as determined by the Supreme Court, or that it was

based on an unreasonable determination of the facts in light of the evidence contained in the record.

For these reasons, habeas relief on ground 7 should be denied.

## Ground 8: IAC – Failure to Object to Evidence

In this claim, Petitioner contends that his trial counsel was ineffective in failing to object to the admission of the aluminum baseball bat found in Petitioner's residence several weeks after the robbery and admitted as Exhibit 12 without objection.[4]  Petitioner contends that "testimony revealed that the weapon used to commit the robbery was an Easton brand bat. ECF No. 1 at 20; ECF No. 9 at 38.  He contends that the testimony of Detective Rowan revealed that another investigator's report contained information specifying the brand of bat used in the robbery to be Easton. Petitioner contends that because the bat taken from the residence was not an Easton brand bat, it was irrelevant to the case and should have been objected to and excluded.  Because this claim was not raised below, it is unexhausted and procedurally defaulted.  Petitioner asks the Court to excuse the procedural default under Martinez.

---

[4] *See also* Ground 4 in which Petitioner claims that trial counsel was ineffective in failing to move to suppress the bat found in his residence.

Petitioner contends that Martinez is applicable because his post-conviction counsel was ineffective in failing to file this claim pursuant to the leave given in two post-conviction orders to file supplemental material.  As discussed in Ground 6, this contention lacks merit because the two orders did not grant leave to file new claims, but granted leave to file additional evidence to support or refute claims already presented in the amended post-conviction motion.  For this reason, Petitioner's threshold claim of ineffective assistance of **post-conviction counse**l must fail and the requirements for excusing the procedural default under Martinez have not been met.  In addition, Petitioner has not set forth a substantial claim of ineffective assistance of **trial counsel** as is required for a procedural default to be excused under Martinez.

Under one of the prongs of the Martinez test, Petitioner must show substantial ineffective assistance of trial counsel, which he has not done. Petitioner cannot show a reasonable probability that but for trial counsel's alleged error in failure to object to the bat taken from his residence, the result of the trial would have been different—a reasonable probability being one sufficient to undermine confidence in the outcome.  Strickland, 466 U.S. at 694.  The bat taken from the residence was not offered into evidence as the weapon used in the robbery, nor was it argued in that

fashion by the prosecutor.  The prosecutor argued that "[w]e don't

necessarily know which one he used, but he had access to these bats and

one of them was actually found in the car that was used, where he was

driving, when he committed this crime."  Ex. D at 261.  As the post-

conviction court noted concerning Petitioner's post-conviction claim 4,

when the court denied that claim:

> The relevance of this evidence retrieved was trivialized even by
> the state in the final argument since no bat recovered could be
> identified as the weapon.  At best, it showed Defendant had
> access to a common aluminum bat.  (Tr. 269-270).  It is clear
> the crux of the case is the photo line-up and Defendant's actual
> physical possession in his pocket of victim's military ID and
> credit card taken in the robbery.  (Tr. 295-298).

Ex. Q at 3.

Even if trial counsel had objected to admission of the bat found in the

residence and even if it had been excluded, the jury would have heard

three witnesses testify that Petitioner threatened the victim with an

aluminum bat and would have heard that an aluminum bat was seen in the

trunk of his car.  Further, the testimony concerning three different bats—the

one used in the robbery which defense counsel referred to as having been

identified as an "Easton" brand, one taken from the residence apparently

marked as a "Louisville Slugger" brand, and one seen in the car trunk with

no writing on it—was used by defense counsel in opening and closing

argument to attempt to show conflicts in the evidence sufficient to support

reasonable doubt.  As noted earlier, defense counsel argued in closing:

> Let's talk about the bat. There is testimony in this case about
> bats, three different bats.  Obviously, she cannot identify the bat
> in evidence as the one that was used and the bat that was - -
> we don't have it, but at least we've heard about the bat that
> was in the trunk that had a noticeable dent in it and it did not
> have any type of drawing, lettering on it, you know, from the
> manufacturing.
> Well, what's the significance of that?  Here is the
> significance of that.  There was information given to law
> enforcement that it was an Easton.  Easton is a distinct[ive]
> brand.  That's not a Easton bat and the bat supposedly was in
> the trunk also had no lettering, no identification on it, so that's
> not an Easton bat.  How many bats do we have to associate
> with Mr. Gray in order for that to have any evidentiary value?  If
> you have two bats that we can inferentially associate with Mr.
> Gray that weren't the bat that was used, is it reasonable to
> assume that he had a third bat and he must have just disposed
> of it? I submit to you that's not reasonable. That's a stretch.

Ex. D at 288.  The post-conviction court found prejudice was not proven in

trial counsel's failure to move to suppress the bat found in the residence, as

Petitioner contended in his post-conviction claim 4, and the district court of

appeal affirmed.  For these same reasons, prejudice cannot be shown by

trial counsel's failure to object to the admission of the same bat into

evidence.

The jury had before it the victim's in court identification of Petitioner

as the person who robbed her by threatening her with a baseball bat; and

she previously picked his photograph out of a photographic lineup.

Petitioner had the victim's identification card and credit card in his pocket when arrested, and his car, which was identified as generally matching that of the robber, had an aluminum bat in the trunk when it was repossessed. The evidence of the bat taken from the residence was relevant not as the weapon used in the robbery, but to show that Petitioner personally had access to an aluminum bat. Finally, the evidence of three different bats presented arguable conflicts in the testimony that were argued by the defense to support reasonable doubt.

Because Petitioner has failed to demonstrate a reasonable probability that, but for trial counsel's alleged error, the result of the trial would have been different, the claim of a substantial ineffectiveness sufficient to justify excusing the procedural default under <u>Martinez</u> has not been shown. Moreover, even if this claim is considered on the merits, it fails for the same reasons that the procedural default cannot be excused. Petitioner cannot demonstrate a reasonable probability that, but for the alleged error of counsel in failing to object, the result of the trial would have been different, a reasonable probability being one sufficient to undermine the Court's confidence in the outcome. Therefore, even if this claims can be heard on the merits in this proceeding, Petitioner has failed to show that the adjudication of this claim in the state court was contrary to, or involving an

unreasonable application of, a clearly established Federal law as determined by the Supreme Court.  Nor has Petitioner shown that the adjudication was based on an unreasonable determination of the facts in light of the evidence contained in the record.

For these reasons, habeas relief on ground 8 should be denied.

### Ground 9: IAC – Failure to Investigate and Call Witnesses

In this ground, Petitioner contends that trial counsel was ineffective for failing to investigate and call certain witnesses.  ECF No. 1 at 23; ECF No. 9 at 41-3.  The claim was not raised in the trial court and Petitioner asks this Court to apply Martinez and excuse the procedural default.  In his claim, Petitioner argues that he provided defense counsel with the names of "numerous people" who had information concerning the charge but counsel failed to interview them or secure their deposition or trial testimony. He contends that defense counsel only interviewed state witnesses and called no witnesses to testify who had any knowledge of the charge or the defense.  ECF No. 1 at 23.

In his memorandum and later reply filed in this Court, Petitioner specifies only two witnesses whose names were on the State's witness list, *see* ECF No. 9-1 at 19, and whose testimony Petitioner contends defense counsel should have presented.  He alleges in his memorandum filed in

support of his § 2254 petition that defense counsel had subpoenaed

Deputy Wilkerson of the Gadsden County Sheriff's Office who, Petitioner

says, was the first officer on the scene and who generated a report that had

in it a description of the assailant and the weapon which varied in important

respects from the statements witnesses gave to Detective Rowan.  ECF

No. 9 at 41-42.  Petitioner contends that Deputy Wilkerson's report would

have shown that a witness identified the brand of bat used in the offense,

which was different from the brand of bat taken from Petitioner's residence.

ECF No. 9 at 42.  He alleges that if Deputy Wilkerson had testified, there is

a reasonable probability that Petitioner would not have been convicted of

armed robbery.  ECF No. 9 at 43.  He also alleges in his reply filed in

response to Respondent's answer that his defense counsel should have

called his sister, Sadonna Gray, to testify concerning whether permission

was given to search Petitioner's residence in which a bat was located.

ECF No. 28 at 44-46.

Respondent contends that the procedural default should not be

excused because the alleged ineffectiveness of trial counsel was not

"substantial" and because even though no witness clearly identified the

brand of the bat used in the crime, the victim did testify that her grandson

"may have" identified the brand as "Easton."  Ex. D at 73-74.  Although the

state's objection to this testimony as hearsay was sustained, the testimony

was not stricken and defense counsel argued without objection to the jury

in closing:

> There was information given to law enforcement that it was an
> Easton.  Easton is a distinct[ive] brand.  That's not an Easton
> bat and the bat supposedly in the trunk also had no lettering, no
> identification on it, so that's not an Easton bat.

Ex. D at 288.   Respondent further disputes that the procedural default

should be excused, contending that trial counsel may have made strategic

choices of which witnesses to call.  ECF No. 26 at 71.

Petitioner contends that aside from the brand of the bat that may

have been contained in Deputy Wilkerson's report, the deputy's testimony

would have revealed that the initial descriptions given of the assailant and

his car were very different from those given to Detective Rowan and

testified to in court by the victim.  The record reflects that defense counsel

had subpoenaed Deputy Wilkerson, but he was not present after the close

of the State's case.  Ex. D at 185.  Defense counsel advised the trial court,

"I think I'm going to go ahead and release him, because I've gotten the

information now through other witnesses."  Ex. D at 193.  Defense counsel

later announced that he was not going to call Deputy Wilkerson.  Ex. D at

198.

The record reflects that defense counsel had investigated the information known by Deputy Wilkerson, had subpoenaed him, but made the strategic decision that he was not needed because counsel had all the information through other witnesses.  Petitioner's unsupported contention that the deputy would have testified that the victim gave a different description of the perpetrator and his car to Deputy Wilkerson does not contradict the record evidence that counsel made a strategic decision that the witness should not be called.  Such strategic choices after investigation are generally considered to be "unchallengeable."  Strickland, 466 U.S. at 690.  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Id.* at 691.

Petitioner contends that defense counsel was substantially ineffective in failing to call his sister, Sadonna Gray, to testify that the search which produced the aluminum bat taken from the residence was without consent. However, according to Petitioner's exhibit ECF No. 9-1 at 37, which is an investigative report by Detective Rowan, Sadonna Gray also told the detective that Petitioner used to live with her but she made him leave

because he is addicted to crack cocaine and because he steals and
abuses her children.  With this information in the record and available to
defense counsel, he might reasonably have made the strategic decision
that allowing Sadonna Gray to testify could risk some of this damaging
information coming before the jury, and that any benefit from her testimony
would be outweighed by this potential risk.  Further, the allegation that
defense counsel failed to investigate possible testimony by Ms. Gray is
unsupported.  She was on the State's witness list, and Petitioner alleges in
his claim that trial counsel investigated the witnesses on the State's witness
list.  *See* ECF No. No. 9 at 23.

As discussed in Ground 4 and 7, even if the bat taken from the
residence was excluded entirely, or disregarded by the jury based on the
testimony of Sadonna Gray, ample other evidence proved that it was
Petitioner who robbed the victim while threating her with an aluminum bat,
that Petitioner had access to an aluminum bat as evidenced by the bat in
the trunk of his car, that Petitioner was identified in court and in a
photographic lineup as the perpetrator, and that when taken into custody,
he had the victim's identification card and credit card in his pocket.
Petitioner has not demonstrated a reasonable probability that, but for his
counsel's failure to call either Deputy Wilkerson or Sadonna Gray, the

result of the trial would have been different. Accordingly, he has failed to establish substantial ineffectiveness of trial counsel as is required before the procedural default may be excused under <u>Martinez</u>. 132 S. Ct. at 1318.

Nor has Petitioner established under <u>Martinez</u> that his post-conviction counsel was ineffective in failing to file this post-conviction claim pursuant to an order of the court allowing 30 days to file supplemental supporting or refuting evidence. Those orders, as discussed above, only allowed the filing of additional evidence pertaining to claims one through five of the amended motion for post-conviction relief. Because post-conviction counsel has not been shown to have been ineffective, the requirements for excusing a procedural default under <u>Martinez</u> have not been met.

Even if the procedural default was excused and the claim could be heard in this § 2254 petition, the claim lacks merit for the same reasons that Petitioner's claim of ineffectiveness of trial counsel under <u>Strickland</u> has not been shown. Petitioner has failed to show that the adjudication of this claim in the state court was contrary to, or involving an unreasonable application of, a clearly established Federal law as determined by the Supreme Court in <u>Strickland</u> or in any other decision. Nor has Petitioner shown that the adjudication was based on an unreasonable determination of the facts in light of the evidence contained in the record.

For these reasons, habeas relief on ground 9 should be denied.

## Conclusion

Based on the foregoing, Petitioner Kyle Gray is not entitled to federal habeas relief.  Accordingly, the § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to

whether a certificate should issue by objections to this Report and
Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed.
R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is
filed, the court may certify appeal is not in good faith or party is not
otherwise entitled to appeal in forma pauperis).

### Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the
§ 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate
of appealability be **DENIED** and that leave to appeal in forma pauperis be
**DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on November 1, 2016.


**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this**
**Report and Recommendation, a party may serve and file specific**
**written objections to these proposed findings and recommendations.**
**Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon**
**all other parties.  A party may respond to another party's objections**
**within fourteen (14) days after being served with a copy thereof.  Fed.**
**R. Civ. P. 72(b)(2).  Any different deadline that may appear on the**
**electronic docket is for the Court's internal use only and does not**
**control.  If a party fails to object to the magistrate judge's findings or**

recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.